# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

GINA FUSCA

**DEFENDANTS**

UNDERWRITING MANAGEMENT EXPERTS LLC

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kevin Console, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102
215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane   ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability   ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Pharmaceutical Slander Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability   ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 340 Marine Injury Product | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| | ☐ 345 Marine Product Liability | | ☐ 880 Defend Trade Secrets | |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | Liability   **PERSONAL PROPERTY** | **LABOR** | Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle   ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle   ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | |
| ☐ 195 Contract Product Liability | Product Liability   ☐ 380 Other Personal | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | ☐ 360 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| | Injury   ☐ 385 Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury - Product Liability | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | Medical Malpractice | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights   **Habeas Corpus:** | | **FEDERAL TAX SUITS** | |
| ☐ 220 Foreclosure | ☐ 441 Voting   ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment   ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/   ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | Accommodations   ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment   **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other   ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education   ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 12101, et seq.; and 43 P.S. § 951, et seq.

Brief description of caus
Plaintiff was discriminated and retaliated against based on her disability in violation of state and federal law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
In excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
07/28/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Lansdale, PA 19446 _____

Address of Defendant: _____ 900 Forty Foot Road Lansdale, PA 19446 _____

Place of Accident, Incident or Transaction: _____ Landsdale, PA _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 07/28/2022 _____  _____  317235 _____
*Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

**B.**  *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Kevin Console _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DATE: 07/28/2022 _____  _____  317235 _____
*Attorney-at-Law / Pro Se Plaintiff*     *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| GINA FUSCA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNDERWRITING MANAGEMENT | : | NO. |
| EXPERTS LLC | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                              (    )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                                            (    )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (    )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                                                       (    )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                                                          (    )

(f)  Standard Management – Cases that do not fall into any one of the other tracks.          ( X )


| | | |
|---|---|---|
| 07/28/2022 | | Plaintiff, Gina Fusca |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-689-4137 | Kevinconsole@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

—————————————————————— :
:
**GINA FUSCA** :
**Lansdale, PA 19446** : **CIVIL ACTION NO.**
:
        **Plaintiff,** :
:
        **v.** : **JURY TRIAL DEMANDED**
:
**UNDERWRITING MANAGEMENT** :
**EXPERTS LLC** :
**900 Forty Foot Road** :
**Lansdale, PA 19446** :
:
        **Defendant.** :
—————————————————————— :

**COMPLAINT**

## I.    INTRODUCTION

Plaintiff, Gina Fusca, brings this action against her former employer, Underwriting Management Experts LLC ("Defendant") for discriminating against Plaintiff based upon her disability (cancer) and for retaliating against Plaintiff for seeking reasonable accommodations for her disability.

Defendant terminated Plaintiff's employment, and her much-need health benefits, after more than four (4) years of loyal and dedicated service, shortly after Plaintiff was diagnosed with cancer, and after Plaintiff had requested an accommodation and had taken medical leave for the same. Plaintiff's performance was at all times excellent.

Defendant's discriminatory and retaliatory conduct is in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.* ("ADA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA").

1

Plaintiff seeks damages, including economic loss, compensatory damages, punitive damages, liquidated damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

## II.    **PARTIES**

1.    Plaintiff, Gina Fusca, is an individual and a citizen of the Commonwealth of Pennsylvania. Plaintiff resides in Lansdale, Pennsylvania.

2.    At all relevant times, Plaintiff was "disabled" in that she suffered from an impairment, which substantially limited one or more of her major life activities, had a record of impairment and/or was regarded as having such impairment.

3.    Defendant is engaged in an industry affecting interstate commerce and regularly does business in the state of Pennsylvania.

4.    Defendant maintains a principal place of business in Lansdale, Pennsylvania.

5.    At all relevant times, Plaintiff worked at Defendant's Lansdale, Pennsylvania offices.

6.    At all relevant times, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

7.    At all relevant times, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

8.    At all relevant times, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

### III.    JURISDICTION AND VENUE

9.    The causes of action which form the basis of this matter arise under the ADA and the PHRA.

10.    This Court has jurisdiction over Count I (ADA) pursuant to 42 U.S.C. §12117(a) and 28 U.S.C. §1331.

11.    This Court has jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

12.    Venue is proper in this District Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to these claims occurred within this District.

13.    On or about January 6, 2021, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), complaining of acts of discrimination and retaliation alleged herein. That complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto and incorporated herein as Exhibit "1" is a true and correct copy of the PHRC complaint (with personal identifying information redacted).

14.    On or about May 4, 2022, the EEOC issued to Plaintiff a Notice of Right to Sue pertaining to Plaintiff's agency complaint. Attached hereto as Exhibit "2" is a true and correct copy of that Notice.

15.    Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

### IV.    FACTUAL ALLEGATIONS

16.    Plaintiff was hired by Defendant in or around November 2016.

3

17. Plaintiff last held the position of Senior Claims Auditor.

18. Plaintiff consistently performed her job duties in a highly competent manner and received positive feedback.

19. Plaintiff last reported to Heather Helbe, Senior Vice President of Claims.

20. Helbe reported to Robert Glorioso, Chief Operating Officer.

21. Glorioso reported to Anne Maire Chapman, Chief Executive Officer, President, and Owner.

22. As of Plaintiff's termination, the following employees were also reporting to Helbe:

    a. Jonathon Remer, Senior Claims Auditor;

    b. Megan Derstine, Senior Claims Auditor;

    c. Brittany Buffington, Claims Auditor; and

    d. Christine Drager, Claims Auditor.

23. Plaintiff was qualified to perform most of those employees' positions.

24. On or about January 17, 2018, Plaintiff was diagnosed with breast cancer and learned that she required surgery.

25. On or about January 17, 2018, Plaintiff informed Chapman and Amy Derstine-Clark, Human Resources Director, of her breast cancer diagnosis.

26. In or around February 2018, after Plaintiff met with her breast cancer surgeon, she informed Chapman and Helen Diener, then Senior Vice President of Claims, that she needed to undergo surgery to remove the tumor, including a partial mastectomy, in connection with her breast cancer diagnosis. Plaintiff stated that she expected to be out of work for approximately one (1) week in connection with her

4

surgery and recovery.

27.    On or about March 2, 2018, Plaintiff went out of work on a medical leave of absence.

28.    On or about March 2, 2018, Plaintiff underwent surgery for her breast cancer, to remove the tumor.

29.    On March 12, 2018, Plaintiff returned to work from her medical leave of absence.

30.    From approximately April through August 2018, Plaintiff underwent chemotherapy and radiation as treatment for her breast cancer. Plaintiff took off time from work and worked several half days for the same.

31.    Defendant was aware that Plaintiff was undergoing chemotherapy and radiation treatment.

32.    In or around September 2020, Chapman told Plaintiff that she wanted to give Plaintiff a salary increase.

33.     On or about October 20, 2020, Plaintiff informed Glorioso of her upcoming bariatric surgery, scheduled for November 10, 2020.

34.    Glorioso responded by suggesting that Plaintiff go out on short term disability and told Plaintiff that he did not want her coming into work if she was not feeling well.

35.    Plaintiff stated that she did not want to go out on short term disability, and that she planned to push through and return to work following her surgery.

36.    When Plaintiff requested to work from home for two (2) to four (4) weeks following her bariatric surgery, Glorioso denied Plaintiff's request and stated that she

was only allowed to work from home for a maximum of two (2) days per week.

37.    On or about November 10, 2020, Plaintiff went out of work on a medical leave of absence.

38.    On or about November 10, 2020, Plaintiff underwent bariatric surgery for her medical condition.

39.    Helbe, Glorioso and Chapman were aware of Plaintiff's medical condition and her bariatric surgery.

40.    On or about November 11, 2020, in a text message to Glorioso, Plaintiff stated that she was not returning home from the hospital that day.  Plaintiff stated that her blood pressure had dropped, and she almost passed out.  Plaintiff informed Glorioso that she had an ultrasound on her left arm and a blood clot was found near where the IV was running.  Plaintiff stated that, as soon as she heard from her oncologist, she should be cleared to go home.

41.    On or about November 12, 2020, in a text message to Glorioso, Plaintiff informed him that she would remain in the hospital for another night, as the doctors wanted to be sure that the blood clot was not deep and that there was a plan in place before discharging her.

42.    On or about November 13, 2020, Plaintiff returned from the hospital.

43.    On or about November 16, 2020, in a text message to Chapman, Plaintiff stated that a few setbacks delayed her discharge from the hospital but she was feeling better and on the road to recovery.

44.    On or about November 16, 2020, Plaintiff returned to work from her medical leave of absence, with the accommodation of working from home.

6

45.    On or about November 17, 2020, Plaintiff returned to work at the office.

46.    On or about November 23, 2020, in a text message to Glorioso, Plaintiff requested and was approved to work from home.

47.    Plaintiff continued to experience pain and recover from her surgery.

48.    On or about November 24, 2020, Plaintiff informed Glorioso and Helbe that she was in excruciating pain and was going to the emergency room.

49.    On or about November 24, 2020, following testing at the emergency room, in a text message to Glorioso, Plaintiff informed him that "[t]hey think it might be kidney cancer."

50.    On the phone, Plaintiff told Glorioso that the CT scan showed renal cell carcinoma in her left kidney.

51.    Glorioso told Plaintiff that Chapman was aware that Plaintiff was at the emergency room, and that he would inform Chapman of Plaintiff's kidney cancer diagnosis.

52.    On or about December 7, 2020, Plaintiff returned to work at the office.

53.    On or about December 8, 2020, Plaintiff learned that she would need to undergo surgery to remove the tumor in her kidney, that she would have to remain in the hospital for a few days, that recovery would be at least two (2) to four (4) weeks, and that, if the tumor had metastasized, her entire kidney may need to be removed.

54.    On or about December 9, 2020, in the morning, in a meeting with Glorioso, Plaintiff informed him that she would need to undergo surgery to remove the tumor in her kidney, that she would have to remain in the hospital for a few days, that recovery would be at least two (2) to four (4) weeks, and that, if the tumor had

7

metastasized, her entire kidney may need to be removed.

55.   On or about December 9, 2020, in the afternoon, in a phone call with Glorioso, Defendant terminated Plaintiff's employment, effective immediately.

56.   Before the termination phone call, Plaintiff had no indication that her job was in jeopardy.

57.   Defendant's stated reason for terminating Plaintiff was that Defendant needed to furlough some employees.

58.   When Plaintiff asked during the termination phone call why she, in particular, had been selected for termination, Glorioso responded that it had nothing to do with what Plaintiff did or did not bring to the company, and that it was just a decision that was made.

59.   During the termination phone call, Plaintiff asked how Defendant came to the decision to terminate her. Glorioso responded by stating that he did not know.

60.   During the termination phone call, Plaintiff asked Glorioso when her health insurance ended.  Glorioso responded by stating that Plaintiff's health insurance ended that night (December 9, 2020).

61.   During the termination phone call, Plaintiff reminded Glorioso that she had cancer and was pre-certified for an MRI for her kidney cancer. Glorioso suggested that Plaintiff find an insurance company that could pick her up with a pre-existing condition.

62.   Defendant received over $1,700,000 in PPP loans in connection with the Covid pandemic, including: a loan approved on April 10, 2020 in the amount of $869,400; and another loan approved on January 29, 2021 in the amount of $840,760. Both of these loans were forgiven.

8

63.     Defendant terminated Plaintiff's employment because of her disability and/or her seeking a reasonable accommodation for her disability and/or her taking medical leaves of absence for her disability.

64.     Plaintiff was not provided with any explanation, including the selection criteria, as to why she was terminated, as opposed to other employees, who, to Plaintiff's knowledge, were non-disabled and/or had not sought reasonable accommodations for a disability.

65.     Plaintiff had no performance or disciplinary issues throughout her employment.

66.     Defendant did not issue to Plaintiff any write up, performance improvement plan, or other documented performance deficiency notice at any time.

67.     Plaintiff was provided with no opportunity to remain employed with Defendant.

68.     Also on or about December 9, 2020, Defendant terminated Irene Murphy, Senior Claims Auditor.

69.     Murphy had been diagnosed with cancer prior to her termination.

70.     To Plaintiff's knowledge, Defendant was aware of Murphy's cancer diagnosis prior to terminating Murphy.

71.     Defendant has a pattern and practice of discriminating against disabled employees.

72.     Following Plaintiff's termination, Defendant assigned her job duties to Derstine and Drager.

9

73.    Plaintiff was more qualified and experienced to perform the duties of her job as compared to the non-disabled employees who did not request reasonable accommodations or take medical leaves of absence to whom Defendant assigned Plaintiff's job duties.

74.    To Plaintiff's knowledge, none of the other individuals referenced herein suffered from a disability and/or requested a reasonable accommodation for a disability during the relevant time period.

75.    Defendant retained other, non-disabled employees, who did not request a reasonable accommodation.

76.    As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

77.    Defendant acted with malice and/or reckless indifference to Plaintiff's protected rights. The conduct of Defendant, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendant.

## COUNT I – ADA

78.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

79.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the ADA.

80.    Defendant acted willfully and intentionally, and with malice and/or reckless

10

indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

81.    As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

82.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless this Court grants the relief requested herein.

83.    No previous application has been made for the relief requested herein.

## COUNT II – PHRA

84.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

85.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated the PHRA.

86.    As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred attorneys' fees and costs.

87.    Plaintiff is now suffering and may continue to suffer irreparable injuries and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

88.    No previous application has been made for the relief requested herein.

11

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of the ADA;

(b)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(c)     enjoining and permanently restraining the violations alleged herein;

(d)     entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

(e)     awarding damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(f)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(g)     awarding punitive damages to Plaintiff under the ADA;

(h)     awarding Plaintiff such other damages as are appropriate under the ADA and the PHRA;

(i)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

12

(j)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated: July 28, 2022                    BY:  *Kevin Console*
                                             Kevin Console, Esq.
                                             1525 Locust Street, 9th Floor
                                             Philadelphia, PA 19102

                                             *Attorneys for Plaintiff,*
                                             *Gina Fusca*

13

# Exhibit 1

Received

JAN 06 2021

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:

**GINA FUSCA**

v.

RESPONDENTS:

**UNDERWRITING MANAGEMENT
EXPERTS LLC**

and

**ANNE MARIE CHAPMAN, aider and abettor**

Docket No.    202001664

1.  The Complainant herein is:

    Name:    Gina Fusca

    Address:    ███████████████████
                Lansdale, PA 19446

2.  The Respondent herein is:

    Name:    Underwriting Management Experts LLC ("Respondent Company"); Anne
                Marie Chapman, aider and abettor ("Respondent Chapman")

    Address:    900 Forty Foot Road
                Lansdale, PA 19446

3.  I, Gina Fusca, the Complainant herein, allege that I was subjected to unlawful discrimination because of my disability (including history of and regarded as) and retaliation for seeking reasonable accommodations for my disability, as set forth below.

## Discrimination and Retaliation

### A. I specifically allege:

[1]       I began working at Respondent Company on or about November 1, 2016.

[2]       I was employed at Respondent Company for more than four (4) years.

[3]       I consistently performed my job duties in a highly competent manner, and received positive feedback.

[4]       I last held the position of Senior Claims Auditor.

[5]       I last reported to Heather Helbe, Senior Vice President of Claims. Helbe reported to Robert Glorioso, Chief Operating Officer. Glorioso reported to Respondent Anne Marie Chapman, Chief Executive Officer, President, and Owner.

[6]       At the time of my termination, the following employees were reporting to Helbe. I was qualified to perform most of these employee's positions.

(a) Jonathon Remer, Senior Claims Auditor;

(b) Megan Derstine, Senior Claims Auditor;

(c) Brittany Buffington, Claims Auditor;

(d) Christine Drager, Claims Auditor.

[7]       On or about January 17, 2018, I was diagnosed with breast cancer and learned that I required surgery.

[8]       On or about January 17, 2018, I informed Respondent Chapman and Amy Derstine-Clark, Human Resources Director, of my breast cancer diagnosis.

[9]       In or about February 2018, after meeting with my breast cancer surgeon, I informed Respondent Chapman and Helen Diener, then Senior Vice President of Claims, that I needed to undergo surgery to remove the tumor, including a partial mastectomy, in connection

To 12155603682    Page: 05 of 11    2021-01-06 14:48:58 EST    12155652858    From: Nancy Glace

with my breast cancer diagnosis. I stated that I expected to be out of work for approximately one (1) week in connection with my surgery and recovery.

[10]    On March 2, 2018, I went out of work on a medical leave of absence.

[11]    On March 2, 2018, I underwent surgery for my breast cancer, to remove the tumor.

[12]    On March 12, 2018, I returned to work from my medical leave of absence.

[13]    From April through August 2018, I underwent chemotherapy and radiation as treatment for my breast cancer. I took off time from work and worked several half days for the same. Respondents were aware that I was undergoing chemotherapy and radiation as treatment for my breast cancer.

[14]    In or about September 2020, I received a positive performance review, consistent with prior performance reviews.

[15]    In or about September 2020, Respondent Chapman told me that she wanted to give me a salary increase.

[16]    On or about October 20, 2020, I informed Glorioso of my upcoming bariatric surgery, scheduled for November 10, 2020. Glorioso responded by suggesting that I go out on short term disability, and told me that he did not want me coming into work if I was not feeling well. I stated that I did not want to go out on short term disability, and that I planned to push through and return to work following my surgery. When I requested to work from home for two (2) to four (4) weeks following my bariatric surgery, Glorioso denied my request and stated that I was only allowed to work from home for a maximum of two (2) days.

[17]    On or about November 10, 2020, I went out of work on a medical leave of absence.

[18]    On November 10, 2020, I underwent bariatric surgery for my medical condition, of which Helbe, Glorioso, and Respondent Chapman were aware.

[19]    On November 11, 2020, in a text message to Glorioso, I stated that I was not returning home from the hospital that day. I stated that my blood pressure had dropped, and I was almost passed out. I informed him that I had an ultrasound on my left arm and a blood clot was found near where the IV was running. I stated that, as soon as I heard from my oncologist, I should be cleared to go home.

[20]    On November 12, 2020, in a text message to Glorioso, I informed him that I would remain in the hospital for another night, as the doctors wanted to be sure that the blood clot was not deep and that there was a plan in place before discharging me.

[21]    On November 13, 2020, I returned home from the hospital.

[22]    On November 16, 2020, in a text message to Respondent Chapman, I stated that a few setbacks delayed my discharge from the hospital but I was feeling better and on the road to recovery.

[23]    On November 16, 2020, I returned to work from my medical leave of absence, with the accommodation of working from home.

[24]    On or about November 17, 2020, I returned to work at the office.

[25]    On November 23, 2020, in a text message to Glorioso, I requested and was approved to work from home. I continued to experience pain and recover from my surgery.

[26]    On November 24, 2020, I informed Glorioso and Helbe that I was in excruciating pain and was going to the emergency room.

[27]    On November 24, 2020, following testing at the emergency room, in a text message to Glorioso, I informed him that "[t]hey think it might be kidney cancer." On the

To 12155603682    From: Nancy Glace

phone. I told Glorioso that the CT scan showed renal cell carcinoma in my left kidney. He told me that Respondent Chapman was aware that I was at the emergency room, and that he would inform her of my kidney cancer diagnosis.

[28]    On December 7, 2020, I returned to work at the office.

[29]    On December 8, 2020, I learned that I would need to undergo surgery to remove the tumor in my kidney, that I would have to remain in the hospital for a few days, that recovery would be at least two (2) to four (4) weeks, and that, if the tumor had metastasized, my entire kidney may need to be removed.

[30]    On December 9, 2020, in the morning, in a meeting with Glorioso, I informed him that I would need to undergo surgery to remove the tumor in my kidney, that I would have to remain in the hospital for a few days, that recovery would be at least two (2) to four (4) weeks, and that, if the tumor had metastasized, my entire kidney may need to be removed.

[31]    On December 9, 2020, in the afternoon, in a phone call with Glorioso, Respondents terminated my employment, effective immediately. Before the meeting, I had no indication that my job was in jeopardy. The stated reason was that Respondent Company needed to furlough some employees. When I asked why I was selected, Glorioso responded that it had nothing to do with what I did or did not bring to Respondent Company, and that it was just a decision that was made. I asked how Respondents came to this decision. He stated that he did not know. I asked him when my health insurance ended. He responded that my health insurance ended that night. I reminded him that I had cancer and was pre-certified for an MRI for my kidney cancer. He suggested that I find an insurance company that could pick me up with a pre-existing condition.

[32]     Respondents terminated my employment because of my disability and/or my seeking reasonable accommodations for my disability and/or my taking medical leaves of absence for my disability.

[33]     I was not provided with any explanation, including the criteria, as to why I was terminated and the nondisabled[1] employees who had not sought reasonable accommodations for a disability[2] were retained.

[34]     I had no performance or disciplinary issues throughout my employment.

[35]     I was provided with no opportunity to remain employed with Respondents.

[36]     On December 9, 2020, in addition to me, Respondents terminated Irene Murphy, Senior Claims Auditor, who also had been diagnosed with cancer.

[37]     Respondents assigned my job duties to Derstine and Drager. I was more qualified and experienced to perform my job duties than the nondisabled employees who did not request reasonable accommodations for a disability or take medical leaves of absence to whom Respondents assigned my job duties.

[38]     Respondents' disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

[39]     Respondent Chapman aided and abetted Respondent Company in discriminating against me because of my disability and retaliating against me because I sought reasonable accommodations for my disability, including taking medical leaves of absence.

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my disability (including history of and regarded as) and retaliated against

---

[1] References herein to an employee not having a disability are to the best of my knowledge.
[2] References herein to an employee not having sought reasonable accommodations for a disability are to the best of my knowledge.

me for seeking reasonable accommodations for my disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA").

4.      The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

   **X**           **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  (a); (d); (e)**

   _____       Section 5.1 Subsection(s) _____

   _____       Section 5.2 Subsection(s) _____

   _____       Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.      Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

   **X**           **This charge will be referred to the EEOC for the purpose of dual filing.**

6.      The Complainant seeks that Respondent be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

To 12155603682     Page 10 of 11     2021-01-06 14:18:56 EST     12155603858     From: Nancy Glace

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

**1/4/2021**
(Date Signed)

(Signature)     Gina Fusca

Lansdale, PA 19446

# Exhibit 2

EEOC Form 161-B (01/2022)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:

**Gina Fusca**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**Lansdale, PA 19446**

From:    **Philadelphia District Office**
**801 Market St, Suite 1000**
**Philadelphia, PA 19107**

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2021-60935** | **Damon Johnson,** **State, Local & Tribal Manager** | **(267) 589-9722** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

> More than 180 days have passed since the filing of this charge.

> The EEOC is terminating its processing of this charge.

*Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** \*of your receipt of this Notice.\*  Otherwise, your right to sue based on the above-numbered charge will be lost.*

*Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.***

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Karen McDonough
05/04/2022

Enclosures(s)

Karen McDonough
Enforcement Manager

cc:    For Respondent: UNDERWRITING MANAGEMENT
EXPERTS LLC
Andrew J. Shapren, Esq.
Buchanan Ingersoll & Rooney Pc
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102

For Charging Party:
Emily R. Derstine Friesen, Esq.
Console Mattiacci Law LLC
Via email: derstinefriesen@consolelaw.com